524 S.E.2d 879

**Linda J. TRACY, Administratrix of the Estate of Douglas B. Tracy, Deceased, Plaintiff Below, Appellant,**

v.

**Athelene COTTRELL, by Her Administrator, Gabriel Cottrell, and General Motors Corporation, a Corporation Doing Business in the State of West Virginia, Defendants Below, Appellees.**

No. 25845.

Supreme Court of Appeals of West Virginia.

Submitted June 2, 1999.

Decided Nov. 12, 1999.

Wayne King, Kevin Duffy, Clay, West Virginia, Attorneys for the Appellant.

Gary W. Hart, Jackson & Kelly, PLLC, Charleston, West Virginia, Joseph E. O'Neil, Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray, Philadelphia, Pennsylvania, Attorneys for the Appellee, General Motors Corporation.

DAVIS, Justice:

The appellant herein and plaintiff below, Linda J. Tracy (hereinafter "Tracy"), Administratrix of the Estate of Douglas B. Tracy (hereinafter "Douglas"), appeals the October 22, 1997, verdict of a Clay County jury, which returned a defense verdict for the appellee herein and defendant below, General Motors Corporation (hereinafter "GM"). Tracy further appeals the circuit court's subsequent order, entered June 11, 1998, which denied her motion to set aside the adverse jury verdict and refused to grant her a new trial. In her civil suit against GM, Tracy sought to recover for the wrongful death of her son, Douglas. Tracy contends Douglas's death was the result of a defective seat belt restraint system found in the GM automobile in

which he was riding as a passenger. In this appeal, Tracy has assigned as error: (1) the giving of certain defense jury instructions; (2) the submission to the jury of special Interrogatory Number 10; (3) the exclusion of the Mertz memorandum; (4) the refusal to designate a witness as an expert; and (5) the preclusion of certain rebuttal testimony. Upon a review of the parties' arguments before this Court, the appellate record herein, and the pertinent authorities, we reverse the decision of the Circuit Court of Clay County.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On January 22, 1993, around 7:30 in the morning, sixteen-year-old Douglas B. Tracy was a passenger in a 1988 Chevrolet Celebrity automobile driven by sixteen-year-old Jennifer Shuler (hereinafter "Ms. Shuler"). Driving on rain-slickened Route 16 North in Clay County, West Virginia, Ms. Shuler veered off of the main road and onto the berm. On this stretch of road, which is heavily traveled by coal trucks, the berm is approximately three to ten inches lower than the main road. Apparently, Ms. Shuler attempted to steer her car back onto Route 16 when she over-corrected the steering wheel and lost control of the vehicle. The Celebrity vehicle then slid into the oncoming traffic of State Route 16 South where a Chevrolet Chevette, driven by Athelene Cottrell[1] (hereinafter "Ms. Cottrell"), struck the passenger side of the Shuler vehicle. After impact, the Celebrity continued to slide over an embankment and finally rested upright in a creek bed.

Witnesses and rescue workers at the scene testified that both Douglas and Ms. Cottrell were killed in the accident.[2] Ms. Shuler sustained severe injuries. Immediately after the accident, observers noted that Douglas was wearing both a lap seat belt and a shoulder belt. It was further reported that Douglas's shoulder belt fit him snugly. During rescue efforts, Douglas's shoulder belt was cut in order to free Ms. Shuler. Thereafter, Carl Wilson, II, Coroner for Clay County, and Trooper S.R. Butcher, of the West Virginia Department of Public Safety, examined Douglas's body and noted various bruises on his neck and shoulders where the belts·had been located. Following the accident investigations and insurance companies' claims adjustments, the Shuler vehicle was destroyed.

In January, 1994, Tracy, Douglas's mother and the Administratrix of his estate, filed a wrongful death action in the Circuit Court of Clay County naming as defendants Ms. Cottrell and GM.[3] The primary focus of the case was Tracy's contention that the Celebrity's restraint system was defective and had been negligently designed and tested. Additionally, Tracy asserted that GM failed to comply with express and implied warranties and further had failed to warn of the known hazards associated with its restraint systems. Prior to trial, the lower court granted GM's motion to bifurcate the trial as to liability and damages. The liability portion of the trial commenced on October 6, 1997. On October 22, 1997, the jury returned a verdict, comprised of ten special interrogatories, in favor of GM. Tracy moved for a new trial and to set aside the jury verdict. The circuit court denied the requested relief by order entered June 11, 1998. From the adverse jury verdict and the circuit court's order denying post-trial relief, Tracy appeals.

## II.

### STANDARD OF REVIEW

■■■ Due to the multiple and diverse errors assigned for appellate consideration,

---

**1.** Also named as a defendant in this case was Athelene Cottrell, by her Administrator, Gabriel Cottrell. The record is unclear as to how Ms. Cottrell was removed from the case.

**2.** Evidence presented at trial indicated that the impact pushed the passenger side door of the

Shuler Celebrity into the center of the car's dashboard.

**3.** Other theories of liability asserted against the defendants included strict liability, negligence, breach of express and implied warranties, failure to warn and crashworthiness.

we will incorporate specific standards of review applicable to the various issues in our discussion of those assignments. Nevertheless, a general standard of review also governs our consideration of the instant appeal. Given that the proceedings underlying this appeal culminated in a jury verdict, we must consider the manner in which we examine the correctness of jury decisions. Typically, " '[a]n appellate court will not set aside the verdict of a jury, founded on conflicting testimony and approved by the trial court, unless the verdict is against the plain preponderance of the evidence.' Point 2, Syllabus, *Stephens v. Bartlett,* 118 W.Va. 421[, 191 S.E. 550 (1937) ]." Syllabus point 1, *Walker v. Monongahela Power Co.,* 147 W.Va. 825, 131 S.E.2d 736 (1963).

> In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true.

Syl. pt. 3, *id.* With this standard in mind, we proceed to consider the assigned errors.

## III.

### DISCUSSION

On appeal to this Court, Tracy complains that the circuit court erred by (1) giving certain jury instructions submitted by GM; (2) incorporating, in the interrogatories submitted to the jury for their consideration, special Interrogatory Number 10; (3) excluding from trial the Mertz memorandum; (4) refusing to designate a particular witness as an expert; and (5) precluding certain proffered rebuttal testimony. We will in turn address each of these assignments.

#### A. *Jury Instructions*

Tracy has assigned as error four jury instructions given by the court. This Court held in Syllabus point 1 of *State v. Hinkle,* 200 W.Va. 280, 489 S.E.2d 257 (1996),

that, "[a]s a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo.*" *Accord Skaggs v. Elk Run Coal Co., Inc.,* 198 W.Va. 51, 63, 479 S.E.2d 561, 573 (1996); Syl. pt. 6, *Voelker v. Frederick Bus. Properties,* 195 W.Va. 246, 465 S.E.2d 246 (1995); Syl. pt. 6, *Tennant v. Marion Health Care Found., Inc.,* 194 W.Va. 97, 459 S.E.2d 374 (1995). We made clear in *Skaggs* that

> [t]o challenge jury instructions successfully, a challenger must first demonstrate the charge as a whole created a substantial and ineradicable doubt about whether the jury was properly guided in its deliberations. Second, even if the jury instructions were erroneous, we will not reverse if we determine, based upon the entire record, that the challenged instruction could not have affected the outcome of the case.

198 W.Va. at 70, 479 S.E.2d at 580. *Accord* Syl. pt. 2, *Roberts v. Stevens Clinic Hosp., Inc.,* 176 W.Va. 492, 345 S.E.2d 791 (1986); Syl. pt. 3, *Lambert v. Great Atl. & Pac. Tea Co.,* 155 W.Va. 397, 184 S.E.2d 118 (1971). Finally, in Syllabus point 4 of *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995), we ruled:

> A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misle[d] by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, as long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

*Accord Kessel v. Leavitt*, 204 W.Va. 95, 144, 511 S.E.2d 720, 769 (1998), *cert. denied*, 525 U.S. 1142, 119 S.Ct. 1035, 143 L.Ed.2d 43 (1999). Within the confines of these principles, we examine separately Tracy's assignment of errors relating to the four jury instructions.

**■■■■ 1.** *Spoliation of Evidence.* Tracy first contends that the circuit court erred in granting GM's Instruction Number 24, regarding an adverse inference which could be attributed to the spoliation of evidence. The following instruction was given:

> You have heard testimony that the 1988 Chevrolet Celebrity at issue in this litigation was destroyed several months after the accident and before GM ever received notice of plaintiff's claim. Consequently, neither the expert witnesses retained by GM, nor any GM representative, had an opportunity to inspect the 1988 Chevrolet Celebrity in connection with this litigation.

> Where, as here, plaintiff as the party making a claim fails to preserve evidence which should properly be part of plaintiff's case, you may infer that the evidence, if it had been available, would have been unfavorable to plaintiff's case.

Tracy claims it was error to give the instruction because she had no ownership interest in or control of the Celebrity automobile. Therefore, Tracy had no power or authority to prevent its destruction following the accident.[4] Tracy's objection to the instruction centers on the criteria utilized by the trial court in its determination to give an adverse instruction on the spoliation of evidence.

**■■■■** It is a fundamental principle of law that a party who reasonably anticipates litigation has an affirmative duty to preserve relevant evidence. *Baliotis v. McNeil*, 870 F.Supp. 1285, 1290 (M.D.Pa. 1994). Under certain conditions, where evidence is destroyed, a trial court has discretion to sanction the offending party by an outright dismissal of claims, the exclusion of countervailing evidence, or a jury instruction on spoliation. "This inference permits the jury to assume that 'the destroyed evidence would have been unfavorable to the position of the offending party.'" *Howell v. Maytag*, 168 F.R.D. 502, 505 (M.D.Pa.1996) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir.1994)). Tracy's issue is one of first impression for this Court,[5] although we have had occasion to address in general terms the issue of an adverse inference jury instruction.

The seminal case on adverse inference instructions is *McGlone v. Superior Trucking Co., Inc.*, 178 W.Va. 659, 363 S.E.2d 736 (1987). *McGlone* required this Court to determine whether an adverse inference instruction should be given which required the

---

**4.** GM argues that Tracy has waived any assignment of error on this issue by failing to present legal authority to the trial court in support of her opposition to the instruction. We have held that "a litigant may not silently acquiesce to an alleged error or actively contribute to such error, and then raise that error as a reason for reversal on appeal." *Page v. Columbia Natural Resources, Inc.*, 198 W.Va. 378, 389, 480 S.E.2d 817, 828 (1996). This Court has also pointed out that "[o]rdinarily, a [party] who has not proffered a particular claim or defense in the trial court may not unveil it on appeal." *State v. Miller*, 197 W.Va. 588, 597, 476 S.E.2d 535, 544 (1996). However, this Court has never held that failing to produce legal authority for an objection at trial, in and of itself, constitutes waiver of the issue for appeal purposes. By timely objecting at the trial, Tracy preserved the issue for appeal. Moreover, the basis on which Tracy objected at trial is consistent with her grounds for error on appeal.

**5.** We previously have declined to determine whether spoliation of evidence is a valid cause of action in this State. *See Harrison v. Davis*, 197 W.Va. 651, 664, 478 S.E.2d 104, 117 (1996) ("We again decline to resolve the viability of such a cause of action because we find the circuit court properly dismissed the plaintiff's spoliation of evidence claim as untimely filed." (citations omitted)). *See also State ex rel. State Farm Fire & Cas. Co. v. Madden*, 192 W.Va. 155, 451 S.E.2d 721 (1994) (noting that plaintiff alleged spoliation of evidence in his amended complaint); *Taylor v. Ford Motor Co.*, 185 W.Va. 518, 408 S.E.2d 270 (1991) (refusing to determine validity of cause of action for spoliation of evidence). In the instant proceeding, we have not been asked to determine whether a claim of spoliation of evidence constitutes a cause of action in West Virginia, so we do not address that issue herein.

jury to presume a negative inference as a result of a party's failure to call a material witness. Prior to *McGlone*, decisions by this Court suggested a conclusive presumption was to be inferred in such a situation. *See* Syl. pt. 5, *Chambers v. Spruce Lighting Co.*, 81 W.Va. 714, 95 S.E. 192 (1918). However, *McGlone* rejected presenting such an instruction to the jury. Specifically, we held in Syllabus point 3 of *McGlone* that:

> The unjustified failure of a party in a civil case to call an available material witness may, if the trier of the facts so finds, give rise to an inference that the testimony of the "missing" witness would, if he or she had been called, have been adverse to the party failing to call such witness. To the extent that Syllabus point 1 of *Vandervort v. Fouse*, 52 W.Va. 214, 43 S.E. 112 (1902 [1903]), Syllabus point 5 of *Garber v. Blatchley*, 51 W.Va. 147, 41 S.E. 222 (1902), and Syllabus point 3 of *Union Trust Co. v. McClellan*, 40 W.Va. 405, 21 S.E. 1025 (1895), are inconsistent with this opinion, they are hereby overruled.

178 W.Va. 659, 363 S.E.2d 736.

In the instant proceeding, the adverse inference instruction on spoliation was consistent with *McGlone*, insofar as the instruction imposed no negative presumption on the jury. Here, however, the actual question requires a legal determination of whether any grounds existed for giving an adverse inference instruction on spoliation. In examining our prior decisions on adverse inference instructions, our cases suggest that some type of control over evidence or fault must be attributable to a party when a witness or evidence is unavailable. For example, in Syllabus point 5, in part, of *Chambers v. Spruce Lighting Co.*, we said that an adverse inference may be drawn "[w]here upon a party to an action rests the burden of proving a material fact in issue, h[e] fail[s], without sufficient excuse, to produce when demanded a document in his possession[.]" 81 W.Va. 714, 95 S.E. 192 (emphasis added). In *Bartlett v. Baltimore & Ohio Railroad Co.*, 84 W.Va. 120, 128, 99 S.E. 322, 322 (1919), we said that for an adverse inference to arise "against a party, it must appear that *he is able to produce, and has some control,* by reason of his situation or relation, over the witness whose testimony would clear up the situation." (Emphasis added). Further, in *Kirchner v. Smith,* 61 W.Va. 434, 450, 58 S.E. 614, 621 (1907), we held that an adverse inference may arise " '[w]here a party has *in his possession or under his control evidence* by the introduction of which at the trial he would be able to render certain a fact material to his success, which is otherwise left in doubt, and he withholds such evidence[.]' " *Id.* (quoting Syl. pt. 8, *Hefflebower v. Detrick,* 27 W.Va. 16 (1885)) (emphasis added).

Responding to Tracy's argument, GM cites to other jurisdictions which allow an adverse consequence or an adverse inference instruction on spoliation of evidence, even where a party does not control, possess or cause the destruction of evidence. However, the cases cited by GM do not fully support GM's contention. In all of these cited cases, the offending party owned or had control over the destroyed evidence. *See Smith v. American Honda Motor Co., Inc.,* 846 F.Supp. 1217 (M.D.Pa.1994) (plaintiff was owner of destroyed evidence); *Anderson v. Litzenberg,* 115 Md.App. 549, 694 A.2d 150 (1997) (defendant had control over destroyed evidence); *Harrison v. Bill Cairns Pontiac,* 77 Md.App. 41, 549 A.2d 385 (1988) (plaintiffs were owners of destroyed evidence); *Fire Ins. Exch. v. Zenith Radio Corp.,* 103 Nev. 648, 747 P.2d 911 (1987) (plaintiff subrogating insurer had taken control of evidence before it was destroyed); *Pia v. Perrotti,* 718 A.2d 321 (Pa.Super.1998) (defendant had control over destroyed evidence).

One case cited by GM holds blameworthy a party having no control over destroyed evidence, in addition to holding blameworthy the party who owned the destroyed evidence. The federal district court in *Powe v. Wagner Electric Sales Corp.,* 589 F.Supp. 657 (S.D.Miss.1984), granted summary judgment to the defendant on the basis of spoliation of evidence. In *Powe,* the owner of a vehicle and a passenger were injured after the vehicle's brakes failed. The owner and passen-

ger jointly sued the manufacturer of the braking system's master cylinder, based upon the cylinder's alleged defect. The defendant moved for summary judgment against both plaintiffs asserting that the owner of the car destroyed the master cylinder, thereby preventing the defendant from making an examination of the evidence. The district court granted summary judgment, in part, because of the spoliation of evidence reasoning that summary judgment was appropriate "where the fact that the evidence is missing is the fault of the Plaintiff and not due to the destruction of the product in the collision or where the product is rendered unavailable by circumstances beyond the Plaintiff's control." *Powe,* 589 F.Supp. at 661.

For the following reasons, we decline to adopt the rationale expressed by the *Powe* court. *Powe* is not a well-reasoned opinion and is facially inconsistent. Insofar as *Powe* granted summary judgment against the owner of the vehicle because the owner had control over the master cylinder, its reasoning is sound. However, *Powe* provides no rational explanation as to why the passenger was also penalized for the destruction of the evidence. *Powe* provides no information as to any relationship between the parties; ownership of the vehicle, be it joint or otherwise; or possible collusion in causing the destruction of the evidence. Yet, *Powe* expressly recognized that such a sanction, *i.e.,* summary judgment for the defendant, would not be appropriate where the evidence is "rendered unavailable by circumstances beyond the Plaintiff's control." *Powe,* 589 F.Supp. at 661. In fact, nothing in the opinion indicates that the passenger had the ability to preserve the master cylinder. Therein lies the inconsistency in the opinion. As such, *Powe* has no persuasive value to our resolution of the spoliation issue.

As a general matter, trial courts do not arbitrarily give adverse inference instructions or impose other sanctions on a party as a result of spoliation of evidence. In fact,

trial courts have developed bright-line tests when making such a decision. Two widely used and competing tests have been developed to guide trial courts in deciding whether to give an adverse inference instruction or impose other sanctions for the spoliation of evidence. Under one test,[6] adopted by the Third Circuit Court of Appeals in *Schmid v. Milwaukee Electric Tool Corp.,* 13 F.3d 76 (3d Cir.1994), a trial court must perform the following analysis in making a determination of whether to give an adverse inference instruction or impose other sanctions on a party because of spoliation of evidence: (1) determine the degree of fault of the party who altered or destroyed the evidence; (2) determine the degree of prejudice suffered by the opposing party; and (3) determine the availability of a lesser sanction that will protect the opposing party's rights and deter future similar conduct. 13 F.3d at 79. *Accord Moyers v. Ford Motor Co.,* 941 F.Supp. 883, 885 (E.D.Mo.1996); *Shaffer v. RWP Group, Inc.,* 169 F.R.D. 19, 25 (E.D.N.Y.1996); *Baliotis v. McNeil,* 870 F.Supp. 1285, 1289 (M.D.Pa.1994); *Anderson v. National R.R. Passenger Corp.,* 866 F.Supp. 937, 945–46 (E.D.Va.1994); *Schroeder v. Pennsylvania, Dep't of Transp.,* 551 Pa. 243, 248–51, 710 A.2d 23, 26–27 (1998).

Other courts rely upon a five-factor test to determine whether a party should have an adverse inference instruction or other sanction imposed because of the spoliation of evidence. Under this test, courts must determine: (1) prejudice to the defendant, (2) whether the prejudice can be cured, (3) the practical importance of the evidence, (4) whether the plaintiff was acting in good faith or in bad faith, and (5) the potential for abuse in not sanctioning the plaintiff. *See Mayes v. Black & Decker, Inc.,* 931 F.Supp. 80, 83 (D.N.H.1996); *Northern Assurance Co. v. Ware,* 145 F.R.D. 281, 282–83 (D.Me.1993); *Headley v. Chrysler Motor Corp.,* 141 F.R.D. 362, 365 (D.Mass.1991); *Lewis v. Darce Towing Co., Inc.,* 94 F.R.D. 262, 266–67 (W.D.La. 1982); *Chicago Hardware & Fixture Co. v. Letterman,* 236 Ga.App. 21, 23, 510 S.E.2d

**6.** This test is commonly referred to as the *Schmid* test.

875, 877 (1999); *Farrell v. Connetti Trailer Sales, Inc.*, 727 A.2d 183, 187 (R.I.1999).

 Based upon our review of decisions from other jurisdictions and decisions by this Court, we adopt the following spoliation of evidence test. We hold that before a trial court may give an adverse inference jury instruction or impose other sanctions against a party for spoliation of evidence, the following factors must be considered: (1) the party's degree of control, ownership, possession or authority over the destroyed evidence; (2) the amount of prejudice suffered by the opposing party as a result of the missing or destroyed evidence and whether such prejudice was substantial; (3) the reasonableness of anticipating that the evidence would be needed for litigation; and (4) if the party controlled, owned, possessed or had authority over the evidence, the party's degree of fault in causing the destruction of the evidence.[7] The party requesting the adverse inference jury instruction based upon spoliation of evidence has the burden of proof on each element of the four-factor spoliation test. If, however, the trial court finds that the party charged with spoliation of evidence did not control, own, possess, or have authority over the destroyed evidence, the requisite analysis ends, and no adverse inference instruction may be given or other sanction imposed.

In the instant proceeding, the evidence supports Tracy's contention that she did not control, own, possess or have authority over the destroyed evidence. Therefore, we conclude that it was an abuse of discretion for the trial court to give an adverse inference instruction.

 **2. *Use of the Words "Warnings" and "Instructions" in Jury Instructions*.** Tracy next argues that the trial court erred by giving GM's Instruction Numbers 25[8] and 26.[9] Tracy contends that these two instructions erroneously used the words "instruction" and "warning" interchangeably, despite this Court's earlier ruling that such

---

7. By degree of fault we mean a determination of whether the destruction of the evidence was intentional or negligent.

8. GM's Instruction Number 25 read as follows:
 "Failure to warn" refers to the allegation that a product is defective because it does not contain adequate warnings or instructions. In order to determine whether the 1988 Chevrolet Celebrity was defective due to a lack of adequate instructions, or warning, you must determine whether a reasonably prudent manufacturer would have utilized instructions or warnings in the 1988 Chevrolet Celebrity regarding the occupant restraint system different from the warning or instruction used by GM.
 In order to find GM liable under plaintiff's failure to warn theory, plaintiff must prove by a preponderance of the evidence that:
 (1) in 1988, GM knew or should have known that by reason of the alleged defect (excessive slack) in the occupant restraint system, the Celebrity was not reasonably safe absent the warning suggested by plaintiff;
 (2) the warning in the manner suggested by plaintiff and the method suggested by plaintiff was feasible at the time of manufacture; and
 (3) the lack of an adequate warning caused Douglas Tracy's death.
 Before you may find GM liable for failure to warn, plaintiff must prove that the lack of an adequate warning both rendered the 1988

Chevrolet Celebrity unsafe and was the proximate cause of Douglas Tracy's death. If you find that the plaintiff has failed to show that a different warning or instruction was needed to make the 1988 Chevrolet Celebrity safe, or that the lack of an adequate warning or instruction was the proximate cause of Douglas Tracy's death, you must find in favor of GM.

9. Instruction Number 26 proffered by GM directed:

 In order to recover under a failure to warn theory, plaintiff must prove by a preponderance of the evidence that the lack or inadequacy of warnings in the 1988 Chevrolet Celebrity proximately caused Douglas Tracy's death. GM may only be liable to petitioner for failure to warn where there is evidence that a warning would have made a difference. Therefore, plaintiff must prove that the lack of a warning regarding the seat belts in the 1988 Chevrolet Celebrity proximately caused Douglas Tracy's death, and that the presence of a warning would have prevented his death. Plaintiff must establish that the warning suggested by plaintiff would have caused Douglas Tracy to act differently or otherwise change his behavior in a manner which would have avoided his death. If you find that a warning by GM would not have prevented Douglas Tracy's death, then you must find in favor of GM.

words are separate, distinct, and not interchangeable. Tracy cites our decision in *Ilosky v. Michelin*, 172 W.Va. 435, 307 S.E.2d 603 (1983), to support her position. There is no merit to this argument. We said clearly in *Ilosky* "that 'a defective product may fall into three broad, and not mutually exclusive, categories: design defectiveness; structural defectiveness; *and use defectiveness arising out of the lack of, or the adequacy of, warnings, instructions, and labels.*'" 172 W.Va. at 441, 307 S.E.2d at 609 (quoting *Morningstar v. Black & Decker Mfg. Co.*, 162 W.Va. 857, 888, 253 S.E.2d 666, 682 (1979)) (emphasis in original). No distinction was made in either *Ilosky* or *Morningstar* regarding the meaning to be attached to the words "warnings" and "instructions." Tracy has articulated no rationale for how the use of the two words misled or confused the jury when the two words were used interchangeably.

Tracy also contends that Instruction Numbers 25 and 26 improperly placed the burden upon her to demonstrate that a warning existed.[10] We do not read the instructions as imposing any such burden. In fact, the instructions are consistent with our decisions in *Ilosky*, 172 W.Va. at 441, 307 S.E.2d at 609, and *Morningstar*, 162 W.Va. at 888, 253 S.E.2d at 682. *Accord Johnson by Johnson v. General Motors Corp.*, 190 W.Va. 236, 244–45, 438 S.E.2d 28, 36–37 (1993). Both instructions reflected, among other things, Tracy's proffered expert evidence which illustrated certain types of warning devices which could have but were not used by GM. To the extent Tracy proffered such evidence, it was incumbent upon her to prove that her specifically named warning devices would have prevented Douglas's death. This burden was properly placed on Tracy. The instructions which were given did not place a burden upon Tracy to demonstrate that a warning existed. Therefore, the trial court committed no error by giving GM's Instruction Numbers 25 and 26.

**3. *Apportioning Death under the Crashworthiness Theory.*** Tracy also contends that it was error for the trial court to give GM's Instruction Number 31.[11] Specifically, Tracy contends that the phrasing of this instruction incorrectly states the applicable law; invites the jury to speculate regarding the injuries which could have killed Douglas; and places upon the jury the burden of apportioning such injuries even though the injury in this case, death, is indivisible. *Citing Mitchell v. Volkswagenwerk, AG*, 669 F.2d 1199 (8th Cir.1982); *Fox v. Ford Motor Co.*, 575 F.2d 774 (10th Cir.1978). In contrast, GM argues that Tracy is precluded from asserting this error because she did not raise it before the trial court. Alternatively, GM states that this Court has expressly indicated that "the jury should be the one to determine whether or not the damages can be apportioned." *Johnson by Johnson v. General Motors Corp.*, 190 W.Va. 236, 243 n. 4, 438 S.E.2d 28, 35 n. 4 (1993).

Before reaching the merits of the parties' contentions, it is necessary to review

---

**10.** The instructions reflected evidence presented by Tracy suggesting types of warnings that could have been used.

**11.** GM's Instruction Number 31 provides:

With reference to a crashworthiness case, you are to bear in mind that the injuries resulting from the initial crash need be distinguished from those which are alleged to have occurred or to have followed due to any alleged defect rendering the vehicle uncrashworthy. In this case, the initial crash occurred when the 1988 Celebrity in which Douglas Tracy was a passenger went out of control, crossed the center line and collided with the 1981 Chevette. GM is not responsible for injuries resulting from the initial crash. Instead, the plaintiff must establish that an alleged defect was the proximate cause of Douglas Tracy's death. If an alleged defect was not the proximate cause, plaintiff may not recover from GM. Even if the alleged defect is proven by plaintiff by a preponderance of the evidence to have been the proximate cause of Douglas Tracy's death, GM is only liable for that portion of damages that are over and above that which would probably have occurred absent the alleged defect. Therefore, if you concluded that Douglas Tracy would have died in this crash even if the defect alleged by plaintiff had not been present at the time of the crash, your verdict still must be in favor of GM.

the applicable law. Typically, this Court refuses to consider instructional error on appeal unless an objection was made at trial.

As a general rule, no party may assign as error the giving of an instruction unless he objects thereto before the arguments to the jury are begun, stating distinctly as to the instruction the matter to which he objects and the grounds of his objection; and ordinarily only grounds thus assigned in the trial court will be considered on appeal of the case to this Court.

Syl. pt. 6, *State v. Davis*, 153 W.Va. 742, 172 S.E.2d 569 (1970). *Accord* W. Va. R. Civ. P. 51 (same); Syl. pt. 1, *Roberts v. Powell*, 157 W.Va. 199, 207 S.E.2d 123 (1973) ("A party may only assign error to the giving of instructions if he objects thereto before arguments to the jury are begun stating distinctly the matter to which he objects and the grounds of his objection.").

 Once it is apparent that a party challenging an instruction has properly preserved the error for appellate review, we evaluate the trial court's exercise of its discretion and the language of the instruction, itself.

A trial court ... has broad discretion in formulating its charge to the jury, as long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

Syl. pt. 4, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). When, however, a particular instruction misstates or mischaracterizes the applicable law, a trial court abuses its discretion by so instructing the jury: " '[i]t is reversible error to give an instruction which is misleading and misstates the law applicable to the facts.' Syllabus point 4, *State v. Travis*, 139 W.Va. 363, 81 S.E.2d 678 (1954)." Syl. pt. 5, *State v. Wyatt*, 198 W.Va. 530, 482 S.E.2d 147 (1996). Stated otherwise, "a jury instruction is erroneous if it has a reasonable potential to mislead the jury as to the correct legal principle

or does not adequately inform the jury on the law. An erroneous instruction requires a new trial unless the error is harmless." *State v. Miller*, 197 W.Va. 588, 607, 476 S.E.2d 535, 554 (1996) (citation omitted). *See also* Syl. pt. 5, *Wheeler v. Murphy*, 192 W.Va. 325, 452 S.E.2d 416 (1994) (" ' ' "An erroneous instruction is presumed to be prejudicial and warrants a new trial unless it appears that the complaining party was not prejudiced by such instruction." [Citations omitted.]' Syllabus Point 6, *Ratlief v. Yokum*, 167 W.Va. 779, 280 S.E.2d 584 (1981).").

 At the heart of these alleged errors is the doctrine of crashworthiness and the application of this law to the facts of the instant appeal. Simply stated,

[a] crashworthiness case is a case in which there are two collisions.

"In the first phase of the accident, the plaintiff's automobile collides with another automobile or with a stationary object. Most of the property damage results from the first collision, but the occupants of the vehicle usually sustain little or no injury at this stage. Personal injuries occur most frequently in the second collision, in which the occupants are thrown against or collide with some part of their automobile. Courts will hold the manufacturer liable for the plaintiff's loss in the second collision only if defective design of the automobile caused or exacerbated the plaintiff's injury."

*Johnson*, 190 W.Va. at 240, 438 S.E.2d at 32 (quoting Note, *Apportionment of Damages in the "Second Collision" Case*, 63 Va. L.Rev. 475, 476 (1977) (footnote omitted)). Thus, under the crashworthiness doctrine,

[a]ny design defect not causing the accident would not subject the manufacturer to liability for the entire damage, but the manufacturer should be liable for that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design.

*Larsen v. General Motors Corp.,* 391 F.2d 495, 503 (8th Cir.1968). *See also Bass v. General Motors Corp.,* 150 F.3d 842, 846 (8th Cir.1998) (describing crashworthiness as "the legal concept which imposes liability based on the construction or design of a product which causes enhanced or greater injuries in the course of or following an initial accident or collision brought about by some independent cause" (internal quotations and citations omitted)).

In the practical application of the doctrine of crashworthiness to particular factual scenarios, courts have developed two standards for determining which party, the injured plaintiff or the defendant manufacturer, bears the burden of proving the existence of a defective design and to which collision the plaintiff's injuries are attributable. The first of these approaches, derived from *Huddell v. Levin,* 537 F.2d 726 (3d Cir.1976), places a heavy burden of proof on the plaintiff:

"First, in establishing that the design in question was defective, the plaintiff must offer proof of an alternative, safer design, practicable under the circumstances.... Second, the plaintiff must offer proof of what injuries, if any, would have resulted had the alternative safer design been used.... Third, as a corollary to the second aspect of proof, the plaintiff must offer some method of establishing the extent of enhanced injuries attributable to the defective design...." [12]

*Blankenship v. General Motors Corp.,* 185 W.Va. 350, 354, 406 S.E.2d 781, 785 (1991)

(quoting *Huddell,* 537 F.2d at 737–38) (footnote added). *See also Johnson,* 190 W.Va. at 241, 438 S.E.2d at 33 (explaining *Huddell* as holding that "the plaintiff not only has the burden of proving the defect and the enhanced injury, but the plaintiff must also prove the extent of the injury caused by the defect" (footnote omitted)).[13]

Contrariwise, the second approach, adopted by the courts in *Fox v. Ford Motor Co.,* 575 F.2d 774 (10th Cir.1978), and *Mitchell v. Volkswagenwerk, AG,* 669 F.2d 1199 (8th Cir.1982), significantly lessens the plaintiff's burden of proof, distributing it more between both the injured plaintiff and the defendant manufacturer:

The more liberal rule announced in *Fox* (and cases that follow *Fox*) is that the plaintiff need show only a defect that was a factor in causing some aspect of the plaintiff's harm. Once the plaintiff has made this *prima facie* showing, the manufacturer can then limit its liability if it can show that the plaintiff's injuries are capable of apportionment between the first and second collisions. Therefore, under this more liberal standard, the burden is upon the manufacturer to make the allocation.

*Blankenship,* 185 W.Va. at 355, 406 S.E.2d at 786 (footnote omitted). *See also Johnson,* 190 W.Va. at 240–41, 438 S.E.2d at 32–33 (describing *Mitchell* as holding that "the plaintiff has the burden of proving that there is a defect and that the defect enhanced the injuries. Once the plaintiff meets that burden the burden shifts to the defendants to

**12.** The *Huddell* formulation requires a plaintiff to separate those injuries sustained as a result of the defect from those injuries which he or she would have sustained in the occurrence absent the defect. "[U]nder this rule, [the plaintiff] would be required to establish what injuries he might have received even though he did not receive them. In other words, [the] plaintiff would have to prove a negative based on a hypothetical set of facts." *Oakes v. General Motors Corp.,* 257 Ill.App.3d 10, 22, 194 Ill.Dec. 844, 851, 628 N.E.2d 341, 348 (1994).

**13.** In *Johnson by Johnson v. General Motors Corp.,* 190 W.Va. 236, 241 n. 2, 438 S.E.2d 28, 33 n. 2 (1993), we cited the following cases adopting the *Huddell* rule: *Seese v. Volkswagenwerk A.G.,*

648 F.2d 833 (3d Cir.1981); *Caiazzo v. Volkswagenwerk A.G.,* 647 F.2d 241 (2d Cir.1981); *Stonehocker v. General Motors Corp.,* 587 F.2d 151 (4th Cir.1978); *Dreisonstok v. Volkswagenwerk, A.G.,* 489 F.2d 1066 (4th Cir.1974); *Craigie v. General Motors Corp.,* 740 F.Supp. 353 (E.D.Pa.1990); *Wernimont v. International Harvester Corp.,* 309 N.W.2d 137 (Iowa Ct.App.1981); *Armstrong v. Lorino,* 580 So.2d 528 (La.Ct.App. 1991); *Crispin v. Volkswagenwerk AG,* 248 N.J.Super. 540, 591 A.2d 966 (App.Div.1991); *Duran v. General Motors Corp.,* 101 N.M. 742, 688 P.2d 779 (Ct.App.1983), *overruled by Brooks v. Beech Aircraft Corp.,* 120 N.M. 372, 902 P.2d 54 (1995); *Garcia v. Rivera,* 160 A.D.2d 274, 553 N.Y.S.2d 378 (1990) (mem.decision).

apportion the damages.").[14]

▮ Weighing these competing theories, this Court, in *Blankenship v. General Motors Corp.*, 185 W.Va. 350, 406 S.E.2d 781 (1991), adopted the less stringent standard embraced by the *Fox/Mitchell* line of cases:

> In West Virginia, to recover on a theory of crashworthiness against the manufacturer of a motor vehicle, it is necessary only to show that a defect in the vehicle's design was *a* factor in causing some aspect of the plaintiff's harm. Once the plaintiff has made this *prima facie* showing, the manufacturer can then limit its liability if it can show that the plaintiff's injuries are capable of apportionment between the first and second collisions; therefore, the burden is upon the manufacturer to make the allocation.

Syl. pt. 2, 185 W.Va. 350, 406 S.E.2d 781. *See also Johnson*, 190 W.Va. at 241, 438 S.E.2d at 33 (recognizing this Court's allegiance to "the *Mitchell* line of cases").

▮ Having reviewed the law of crashworthiness and the standard previously adopted by this Court, we turn now to assess the merits of the parties' arguments in the present controversy. We note at the outset that counsel for Tracy specifically objected to the trial court's decision to instruct the jury in accordance with GM's Instruction Number 31, and that he challenged the use of the article "the" in the phrase "the plaintiff must establish that an alleged defect was *the* proximate cause of Douglas Tracy's death." (Emphasis added).[15] Comparing this language with the law of crashworthiness announced in Syllabus point 2 of *Blankenship*, we are left with the firm conviction that the trial court's instruction misstates the applicable law. In *Blankenship* we emphasized that "it is necessary only to show that a defect in the vehicle's design was *a* factor in causing some aspect of the plaintiff's harm." Syl. pt. 2, in part, 185 W.Va. 350, 406 S.E.2d 781.

Employment of the definite article "the" in the jury instruction creates the distinct impression that Tracy has to establish that the alleged defect was the one particular, only, or sole proximate cause of Douglas's death. *See, e.g., United States v. Hudson*, 65 F. 68, 71 (W.D.Ark.1894) (" 'The' is the word used before nouns, with a specifying or particularizing effect...."), *mandamus granted sub nom. Hudson v. Parker*, 156 U.S. 277, 15 S.Ct. 450, 39 L.Ed. 424 (1895); *Brooks v. Zabka*, 168 Colo. 265, 269, 450 P.2d 653, 655 (1969) ("It is a rule of law well-established that the definite article 'the' particularizes

---

14. The *Johnson* court, 190 W.Va. at 241 n. 2, 438 S.E.2d at 33 n. 2, additionally referenced various cases adopting the *Mitchell* approach: *Tafoya v. Sears Roebuck & Co.*, 884 F.2d 1330 (10th Cir. 1989), *overruled on other grounds by Wagner v. Case Corp.*, 33 F.3d 1253 (10th Cir.1994); *Harvey by Harvey v. General Motors Corp.*, 873 F.2d 1343 (10th Cir.1989); *Shipp v. General Motors Corp.*, 750 F.2d 418 (5th Cir.1985); *McLeod v. American Motors Corp.*, 723 F.2d 830 (11th Cir.1984); *Richardson v. Volkswagenwerk, A.G.*, 552 F.Supp. 73 (W.D.Mo.1982); *General Motors Corp. v. Edwards*, 482 So.2d 1176 (Ala.1985), *overruling recognized by Brooks v. Colonial Chevrolet–Buick, Inc.*, 579 So.2d 1328 (Ala.1991); *Czarnecki v. Volkswagen of America*, 172 Ariz. 408, 837 P.2d 1143 (Ct.App.1991); *Doupnik v. General Motors Corp.*, 225 Cal.App.3d 849, 275 Cal.Rptr. 715 (1990); *Fouche v. Chrysler Motors Corp.*, 107 Idaho 701, 692 P.2d 345 (1984); *Buehler v. Whalen*, 70 Ill.2d 51, 15 Ill.Dec. 852, 374 N.E.2d 460 (1978); *Valk Mfg. Co. v. Rangaswamy*, 74 Md.App. 304, 537 A.2d 622, *cert. granted sub nom. Montgomery County v. Valk Mfg. Co.*, 313 Md. 9, 542 A.2d 845 (1988) (table decision), *rev'd*, 317 Md. 185, 562 A.2d 1246 (1989); *McDo-*

*well v. Kawasaki Motors Corp. USA*, 799 S.W.2d 854 (Mo.Ct.App.1990); *Lee v. Volkswagen of America, Inc.*, 688 P.2d 1283 (Okla.1984) (per curiam); *May v. Portland Jeep, Inc.*, 265 Or. 307, 509 P.2d 24 (1973); *Engberg v. Ford Motor Co.*, 87 S.D. 196, 205 N.W.2d 104 (1973); *Sumnicht v. Toyota Motor Sales, U.S.A., Inc.*, 121 Wis.2d 338, 360 N.W.2d 2 (1984); *Chrysler Corp. v. Todorovich*, 580 P.2d 1123 (Wyo.1978).

15. The objectionable "the" language also appears in the next sentences following the above-quoted phrase:

> If an alleged defect was not *the* proximate cause, plaintiff may not recover from GM. Even if the alleged defect is proven by plaintiff by a preponderance of the evidence to have been *the* proximate cause of Douglas Tracy's death, GM is only liable for that portion of damages that are over and above that which would probably have occurred absent the alleged defect.

(Emphasis added).

the subject which it precedes. It is a word of limitation...." (citation omitted)); *Hoffman v. Franklin Motor Car Co.*, 32 Ga.App. 229, 237, 122 S.E. 896, 900 (1924) ("The word 'the' is a definitive, and is commonly used before nouns which are specific or understood."); *Missouri v. Campbell*, 210 Mo. 202, 224, 109 S.W. 706, 712 (1908) ("[T]he article 'the' directs what particular thing or things we are to take or assume as spoken of. It determines what particular thing is meant; that is, what particular thing we are to assume to be meant...." (internal quotations and citation omitted)), *overruled on other grounds by Missouri v. Adkins*, 284 Mo. 680, 225 S.W. 981 (1920); *Lower Manhattan Loft Tenants v. New York City Loft Bd.*, 66 N.Y.2d 298, 304, 496 N.Y.S.2d 979, 982, 487 N.E.2d 889, 892 (1985) ("'The' ... 'refers to someone or something that is unique ... or exists as only one at a time.'" (quoting Webster's Third New International Dictionary 2368 (unabridged 1970))).

On the other hand, this Court's use of the indefinite article "a" in the *Blankenship* crashworthiness standard permits a plaintiff to recover so long as he or she demonstrates that the defective design was but "*a* factor in causing ... the plaintiff's harm," Syl. pt. 2, in part, 185 W.Va. 350, 406 S.E.2d 781, thereby suggesting that the plaintiff's injuries may have resulted from many possible elements, of which the defective design is but one possible consideration. *See Deutsch v. Mortgage Sec. Co.*, 96 W.Va. 676, 681, 123 S.E. 793, 795 (1924) ("The indefinite article 'a' may some times mean one, where only one is intended, or it may mean one of a number, depending upon the context." (citation omitted)). *See also Hudson*, 65 F. at 71 (noting "the indefinite or generalizing force of 'a'"); *Arkansas v. Martin*, 60 Ark. 343, 349, 30 S.W. 421, 422 (1895) ("[T]he adjective 'a' ... [is] commonly called the 'indefinite article,' and so called, too, because it does not define any particular person or thing...."); *California v. One 1940 Buick Sedan*, 71 Cal. App.2d 160, 164, 162 P.2d 318, 320 (1945) (construing "a" to be synonymous with the word "any," which "may mean ... 'one out of many'" (citations omitted)); *Stephan v. Pennsylvania Gen. Ins. Co.*, 224 Conn. 758, 764, 621 A.2d 258, 261 (1993) (recognizing that "the indefinite article[] 'a' ... refer[s] to unlimited objects" (citation omitted)). *But see Harward v. Virginia*, 229 Va. 363, 366, 330 S.E.2d 89, 91 (1985) ("'Any' and 'a' are not synonymous. 'Any' includes 'all' and 'a' is limited to 'one.'" (citation omitted)).

Because there exists in the subject instruction "a reasonable potential" that the jury was misled "as to the correct legal principle" to be applied during their deliberations, due to the substitution of the word "the" where the term "a" was required, we find that reversal on this ground is warranted. *See State v. Miller*, 197 W.Va. at 607, 476 S.E.2d at 554.

In addition to challenging the specific wording of GM's Instruction Number 31, Tracy also asserts that the instruction incorrectly directs the jury to apportion the indivisible injury at issue in this case, *i.e.*, death. We previously considered the issue of indivisible injuries and the jury's apportionment thereof in *Johnson* stating, in dicta, that "a crashworthiness case is a unique case. Because of its uniqueness, *absent special circumstances*, the jury should be the one to determine whether or not the damages can be apportioned." *Johnson*, 190 W.Va. at 243 n. 4, 438 S.E.2d at 35 n. 4 (emphasis added). Despite our earlier refusal to adopt the crashworthiness jurisprudence recognizing that the appropriateness of apportionment is a question of law, *see Mitchell*, 669 F.2d at 1208, and "establish[ing] a bright line rule that death ... [is] incapable of apportionment in crashworthiness cases," *Johnson*, 190 W.Va. at 243 n. 4, 438 S.E.2d at 35 n. 4 (citations omitted), we find the current controversy to constitute the "special circumstances" alluded to in *Johnson*.

■ Unlike the serious, though ultimately nonfatal, injuries sustained by the plaintiffs in *Johnson*,[16] the injury at issue in this

---

**16.** In *Johnson*, plaintiff Andrew Johnson suffered "broken teeth, [a] broken nose, and [a] blow-out

case is, by its very nature, indivisible and incapable of apportionment.[17] " 'Certain results, by their very nature, are obviously incapable of any logical, reasonable or practical division. Death is such a result....' " *Mitchell,* 669 F.2d at 1203 n. 2 (quoting William L. Prosser, *Handbook of the Law of Torts* § 52, at 315 (4th ed.1971) (footnote omitted)). *See also Fox,* 575 F.2d at 787 (noting that death "is not a divisible injury in which apportionment is either appropriate or possible" (citations omitted)). Given that the indivisible injury of death does not lend itself to apportionment, courts deciding crashworthiness cases involving indivisible injuries have based liability for the resultant damages upon common law principles of concurrent negligence.

"Concurrent, as distinguished from joint [sic] negligence, [sic] arises where the injury is proximately caused by the concurrent wrongful acts or omissions of two or more persons acting independently. That the negligence of another person than the defendant contributes, concurs or co-operates to produce the injury is of no consequence. Both are ordinarily liable. And unless the damage caused by each is *clearly separable,* permitting the distinct assignment of responsibility to each, each is liable for the entire damage. The degree of culpability is immaterial."

*Mitchell,* 669 F.2d at 1206 n. 6 (quoting 1 T. Shearmon & A. Redfield, *The Law of Negligence* § 122, at 317–18 (6th ed.1913) (emphasis added)) (additional citations omitted). *See also Bass,* 150 F.3d at 850 (treating defendant manufacturer as "a concurrent tortfeasor jointly and severally liable for [the plaintiff's indivisible] total injuries" (citations omitted)); Restatement (Second) of Torts § 433B(2) (1965) ("Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor.").[18]

When applied specifically to the law of crashworthiness, concurrent negligence concepts place " 'the burden of establishing that the injuries in a multiple-accident situation are capable of apportionment ... upon the defendants.' " *Mitchell,* 669 F.2d at 1208 (quoting *Mathews v. Mills,* 288 Minn. 16, 23, 178 N.W.2d 841, 845 (1970)) (additional citation omitted). Thus, "[i]f the manufac-

---

fracture of his left eye," while plaintiff Gregory Johnson sustained serious injuries to his large and small intestines, "severed ... stomach muscles," and a spine fracture, which injuries left him "confined to a wheelchair for the most part" and necessitated a colostomy. *190 W.Va. at 239, 438 S.E.2d at 31.*

**17.** "An indivisible injury results when two or more causes combine to produce a single injury incapable of division on any reasonable basis and each is a substantial factor in bringing about the harm." *Sanders v. Wallace,* 817 S.W.2d 511, 517 (Mo.Ct.App.1991) (citations omitted).

**18.** While this Court has not previously had occasion to examine a crashworthiness case involving the apportionment of liability for the indivisible injury of death, we have, on more than one occasion, recognized the theory of concurrent negligence in tort cases involving inseparable injuries. *See* Syl. pts. 1 and 5, *Long v. City of Weirton,* 158 W.Va. 741, 214 S.E.2d 832 (1975) (Syl. pt. 1: " 'Where two or more persons are guilty of negligence which occurs in point of time and place, and together proximately cause or contribute to the injuries of another, such per-

sons are guilty of concurrent negligence and recovery may be had against both or all of them.' *Syllabus* point 13., *Lester v. Rose,* 147 W.Va. 575, 130 S.E.2d 80 (1963)."; Syl. pt. 5: "In a concurrent negligence case, the negligence of the defendant need not be the sole cause of the injury, it being sufficient that it was *one of the efficient causes* thereof, without which the injury would not have resulted; but it must appear that the negligence of the person sought to be charged was responsible for *at least one of the causes* resulting in the injury." (emphasis added)), *superseded by statute on other grounds as stated in Pritchard v. Arvon,* 186 W.Va. 445, 413 S.E.2d 100 (1991). *See also Louk v. Isuzu Motors, Inc.,* 198 W.Va. 250, 262–63, 479 S.E.2d 911, 923–24 (1996) (recognizing "the rules applicable to concurrent negligence, that no one defendant need be the sole cause of the injury sustained if the negligence of two or more parties concurred in time and place and the negligence of each proximately contributed to the resulting harm. Then recovery may be had against all the parties whose negligence proximately contributed to the injury." (citation omitted)).

turer's negligence is found to be a substantial factor in causing an indivisible injury such as ... death, ... then absent a reasonable basis to determine which wrongdoer actually caused the harm, the defendants should be treated as joint and several tortfeasors." *Mitchell,* 669 F.2d at 1206 (citation omitted). With due recognition for our prior acceptance of concurrent negligence concepts and our adoption of the crashworthiness doctrine, we take our jurisprudence in this field one step farther by today holding that a defendant manufacturer seeking to apportion liability for the indivisible injury of death in a wrongful death crashworthiness cause of action must prove, by a preponderance of the evidence, that the defective product was not a factor in causing the decedent's death. Absent such a showing, the defendant manufacturer is jointly and severally liable for all of the harm.[19]

▮▮▮▮ Lastly, and with specific appreciation of the complexity of liability issues attending indivisible fatal injuries in crashworthiness cases, we recognize that " '[w]hether or not the harm to the plaintiff is capable of apportionment among two or more causes is a question of law.' " *Mitchell,* 669 F.2d at 1208 (quoting *Mills,* 288 Minn. at 23, 178 N.W.2d at 845) (emphasis omitted) (additional citation omitted). *Accord* Restatement (Second) of Torts § 434(1)(b) (1965). As a question of law, the issue of apportionment is a matter for the trial judge to decide, not the jury. "Determinations involving questions of law are within the sole province of the court, while determinations of fact are within the province of the jury. Thus, the court must

resolve questions of law and cannot delegate that responsibility to the jury." Syl. pt. 4, in part, *Harrison v. Town of Eleanor,* 191 W.Va. 611, 447 S.E.2d 546 (1994). Therefore, " '[o]nce the trial court determines that the harm is capable of apportionment, the question of actual apportionment of damages among several causes becomes one of fact to be determined by the jury.' " *Mitchell,* 669 F.2d at 1208–09 (quoting *Mills,* 288 Minn. at 23, 178 N.W.2d at 845 (citation omitted)) (additional citation omitted).

▮▮▮▮ Accordingly, we hold that in a wrongful death crashworthiness cause of action, the jury is charged with determining whether the vehicle's design was defective. The ultimate issue of whether the resultant death can be apportioned among the multiple collisions is a question of law to be decided by the trial judge. If the trial judge concludes that the fatal injury can be apportioned, the jury then may determine the apportionment of the defendants' liability and the consequent damages for which they are responsible.[20]

Having found that the circuit court erroneously instructed the jury regarding the law of crashworthiness, we reverse this case and remand it to the circuit court for further proceedings consistent with this opinion.[21]

### B. Exclusion of the Mertz Memorandum

▮▮▮▮ Tracy's next assignment of error relates to the "Mertz memorandum" and the trial court's denial of Tracy's request to introduce this document into evidence. In Syllabus point 9 of *Tudor v. Charleston Area*

---

**19.** Due to the factual and legal distinctions between the instant appeal and our prior decision of *Johnson,* we expressly limit today's holding to crashworthiness cases involving fatal injuries. *See supra* note 16 (describing nonfatal injuries sustained by plaintiffs in *Johnson* ). *See also* Syl. pt. 2, *Johnson,* 190 W.Va. 236, 438 S.E.2d 28 (limiting treatment of crashworthiness doctrine to discussion of effect of jury's apportionment of damages upon prior settlements).

**20.** *See supra* note 18.

**21.** Because of our resolution of the assignment of error regarding Instruction Number 31, and the

necessity of a new trial, we need not separately address Tracy's assignment of error regarding Interrogatory Number 10. That special verdict interrogatory read: "Do you find from a preponderance of the evidence that the death of Douglas Tracy was a result of the severity of the crash regardless of the restraint system and the nature of warnings and instructions given?" We state only that, pursuant to our holding today, the trial judge, and not the jury, must decide whether the indivisible injury of death may be apportioned in a wrongful death crashworthiness cause of action.

*Medical Center, Inc.*, 203 W.Va. 111, 506 S.E.2d 554 (1997), we set forth our standard of review regarding a circuit court's decision to admit or exclude evidence:

> The West Virginia Rules of Evidence ... allocate significant discretion to the trial court in making evidentiary ... rulings. Thus, rulings on the admission of evidence ... are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary ... rulings of the circuit court under an abuse of discretion standard.

In the instant proceeding, the trial court held that the Mertz memorandum could not be introduced without its author being present at trial.[22] The record indicates that the Mertz memorandum is a document prepared by a former employee of GM during the course of and in the scope of the employee's employment with GM. The document was provided to Tracy by GM pursuant to a discovery request. The Mertz memorandum discusses how the design of certain GM automobiles permitted inadvertent slack in the shoulder restraint system.

 Tracy cites to a number of evidentiary rules that she contends permitted the Mertz memorandum to be introduced without its author being present. We need not consider the numerous rules cited by Tracy. This issue is controlled by our recent decision in *Lacy v. CSX Transportation, Inc.*, 205 W.Va. 630, 520 S.E.2d 418 (1999). *Lacy* was a civil action involving injuries received by the plaintiffs when their car collided with the defendant's train. One of the issues in

that case involved the exclusion of certain portions of an accident report prepared by an employee of the defendant. Plaintiffs sought to introduce the report. The trial court excluded the evidence, ruling that the employee had to be present at trial to authenticate the report and to be available for examination regarding it. We reversed the trial court's ruling after finding the evidence was admissible under Rule 803(6) of the West Virginia Rules of Evidence. In Syllabus point 7 of *Lacy* we held:

> Before evidence may be admitted under W. Va. R. Evid. 803(6), the proponent must demonstrate that such evidence is (1) a memorandum, report, record, or data compilation, in any form; (2) concerning acts, events, conditions, opinions or diagnoses; (3) made at or near the time of the matters set forth; (4) by, or from information transmitted by, a person with knowledge of those matters; (5) that the record was kept in the course of a regularly conducted activity; and (6) that it was made by the regularly conducted activity as a regular practice.

*Id.* Finally, in Syllabus point 12 of *Lacy*, we said that "[a] record of a regularly conducted activity that otherwise meets the foundational requirements of W. Va. R. Evid. 803(6) is presumptively trustworthy, and the burden to prove that the proffered evidence was generated under untrustworthy circumstances rests upon the party opposing its admission." *Id.*

The evidence establishes that the Mertz memorandum falls squarely under Rule

---

**22.** At this juncture, we wish to acknowledge that GM is correct in stating that the trial court placed upon Tracy the burden of demonstrating the substantial similarity between the restraint system discussed in the Mertz memorandum and the restraint system installed in the accident vehicle. Nevertheless, we disagree with GM's contention that Tracy's failure to meet this burden was the sole obstacle to the introduction of this document. Rather, the trial court repeatedly voiced concern that Mr. Mertz was the proper person through whom to introduce the subject memorandum and, when finally requested to determine the admissibility issue during trial, ruled:

> If Mertz is not going to be here to testify, you can't come in and talk about Mertz.
>
> ....
>
> I'm not going to permit Mr. King [counsel for Tracy] to put Mertz' memorandum in[to evidence], because you were talking about what Mertz' opinion was, and if Mertz had an opinion, he could come down here and tell us what it is.

Because it is apparent from the record that the trial court ultimately based its exclusion of the Mertz memorandum on Mr. Mertz's failure to testify, we accordingly limit our determination of this assignment to this ruling.

803(6), as a record of a regularly conducted business activity. The Mertz memorandum should not have been excluded on the grounds that the preparer had to be present at trial.[23]

### C. Refusal to Permit a Witness to Testify

■ Tracy further contends that the circuit court erred in refusing to allow Carl Wilson, II, Coroner for Clay County, to testify as an expert in causation of death.[24] We held in Syllabus point 6 of *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991), that "[t]he admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong." We also have held in Syllabus point 5 of *Gentry v. Mangum*, 195 W.Va. 512, 466 S.E.2d 171 (1995), that:

> In determining who is an expert, a circuit court should conduct a two-step inquiry. First, a circuit court must determine whether the proposed expert (a) meets the minimal educational or experiential qualifications (b) in a field that is relevant to the subject under investigation (c) which will assist the trier of fact. Second, a circuit court must determine that the expert's area of expertise covers the particular opinion as to which the expert seeks to testify.

*Gentry* also noted that "[n]either a degree nor a title is essential, and a person with knowledge or skill borne of practical experience may qualify as an expert, although the circuit court may exclude testimony if the experience is too far removed from the subject of the proposed testimony." *Gentry*, 195 W.Va. at 525 n. 18, 466 S.E.2d at 184 n. 18.

■ The record is unclear as to whether the trial court precluded Mr. Wilson's testimony, in part, because he was not a medical doctor. To the extent that such a professional title formed part of the trial court's basis for excluding this testimony, it was erroneous under *Gentry*. As a nonmedical coroner for Clay County, Mr. Wilson's employment required that he make an official determination regarding the cause of death. To the extent that the trial court excluded Mr. Wilson's testimony because an autopsy was not performed on Douglas's body, this too was error. Mr. Wilson also is an undertaker and operates a mortuary. This Court held long ago that "[t]he testimony of an undertaker, who prepared the body of deceased for burial, describing the condition of his body, caused by its violent contact with the bridge, is admissible to prove the cause of death." Syl. pt. 11, *State v. Weisengoff*, 85 W.Va. 271, 101 S.E. 450 (1919). *See also* Syl. pt. 3, *West Virginia Div. of Highways v. Butler*, 205 W.Va. 146, 516 S.E.2d 769 (1999) ("Under the permissive standard for the admission of expert testimony set forth in Rule 702 of the West Virginia Rules of Evidence, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify to the value of real property in an eminent domain proceeding if the proffered testimony will assist the trier of fact to understand the evidence or to determine a fact in issue.").

■ In the final analysis, precluding Mr. Wilson's testimony as an expert regarding

---

**23.** Rule 803(6) of the West Virginia Rules of Evidence provides in full:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

**24.** The circuit court permitted Mr. Wilson to testify regarding other matters, refusing to let him testify only regarding the cause of Douglas's death.

Douglas's death was harmless error. GM correctly asserts that Mr. Wilson did, in fact, make a nonresponsive statement to the jury wherein he stated that Douglas died as a result of the seat belt breaking his neck.

■ Tracy's last assignment of error involves the trial court's refusal to allow Mr. Wilson to testify on rebuttal that Douglas's internal injuries were not severe enough to cause death. This Court indicated in Syllabus point 4, in part, of *Adams v. Sparacio*, 156 W.Va. 678, 196 S.E.2d 647 (1973), that the issue of rebuttal testimony "is addressed to the sound discretion of the trial court and the exercise of such discretion is not subject to review by an appellate court unless there has been an abuse thereof." *See Michael v. Sabado*, 192 W.Va. 585, 595, 453 S.E.2d 419, 429 (1994) ("Under the plain language of Rule 611(a) [of the West Virginia Rules of Evidence] and our prior decisions, a trial court has discretion in allowing rebuttal testimony after a party rests its case." (citing *State v. Oldaker*, 172 W.Va. 258, 304 S.E.2d 843 (1983))). The record in the instant case shows that testimony was proffered by GM's expert suggesting the types of internal injuries a person might suffer in such a collision. Because the trial court permitted the testimony, it was proper for Tracy to offer the rebuttal testimony of Mr. Wilson about the types of internal injuries Douglas actually sustained. Therefore, we find that it was an abuse of discretion by the trial court to preclude rebuttal testimony by Mr. Wilson.

## IV.

## CONCLUSION

In view of the foregoing, this case is reversed, and a new trial is awarded to Tracy.

Reversed and Remanded.

Justice SCOTT did not participate.