# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Thomas E. Samples, Executor of
the Estate of Patricia C. Samples,
Plaintiff Below, Petitioner**

**FILED**

October 18, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 12-1538** (Harrison County 10-C-191)

**Cecil T. Holbert, M.D., and the West Virginia
University Board of Governors,
Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioner Thomas E. Samples, by counsel Geoffrey C. Brown and Christopher J. Regan, appeals from the Circuit Court of Harrison County's order denying his motion for new trial. Respondent Cecil T. Holbert, M.D. ("Dr. Holbert"), by counsel P. Gregory Haddad and Carrie Waggoner Boyle, and Respondent West Virginia University Board of Governors ("WVUBOG"), by counsel Timothy R. Linkous, J. Robert Russell, and Margaret L. Miner, filed responses. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

This appeal stems from a defense verdict following the jury trial of petitioner's medical malpractice suit against WVUBOG and Dr. Holbert. Petitioner is the son and executor of the estate of Patricia Samples, who died at the United Hospital Center ("UHC")[1] located in Clarksburg, West Virginia, on October 14, 2009. Mrs. Samples died while admitted to UHC after having reported to the UHC emergency room the previous day.

The evidence at trial demonstrated that Mrs. Samples, age seventy-three, presented to the UHC emergency room around 8:30 p.m. on October 13, 2009, with a history of nausea and vomiting. Her abdomen was soft and not distended. At 10:00 p.m., Stefan Dobranski, M.D., an agent and employee of WVUBOG, began his shift in the emergency room. Dr. Dobranski examined Mrs. Samples, learned that she had vomited while in the emergency room, but found her abdomen was still soft, not distended, and with no rebound tenderness. Dr. Dobranski

---

[1]Petitioner filed an amended complaint naming UHC as a defendant. Petitioner and UHC settled prior to trial.

1

obtained a series of x-rays of Mrs. Samples' abdomen, which showed no evidence of a small bowel obstruction. Dr. Dobranski diagnosed Mrs. Samples with intractable vomiting and dehydration and treated her with IV fluids. Around midnight, Dr. Dobranski consulted with Dr. Holbert, who accepted Mrs. Samples' admission to the hospital. Mrs. Samples was transferred to a room on the fourth floor.

The nurse assigned to Mrs. Samples updated Dr. Holbert by telephone around 1:30 a.m. on October 14, 2009. Dr. Holbert's expert witness testified that the nurse "did a total assessment of [Mrs. Samples] from head to toe and then reported that total assessment to Dr. Holbert, and from what the assessment showed, there was no reason for Dr. Holbert to go in." According to the nurse's testimony, Mrs. Samples had improved with the administration of anti-nausea medication, and that she would have contacted Dr. Holbert if Mrs. Samples' condition changed.

The nurse testified that Mrs. Samples remained stable until about 6:54 a.m., at which time Mrs. Samples collapsed while being assisted to the bathroom, and a Code Blue was called. Mrs. Samples was resuscitated and transferred to the Critical Care Unit ("CCU"). Dr. Holbert was contacted, reported to the hospital, and noted that Mrs. Samples' abdomen was distended with no bowel sounds. After a nasogastric tube recovered 700 cc of bloody fluid from Mrs. Samples, Dr. Holbert requested a surgery consult. However, Mrs. Samples coded for a second time and resuscitation efforts were unsuccessful. She died at 7:57 a.m. on October 14, 2009.

After Dr. Holbert informed petitioner by telephone of his mother's death, staff at UHC inquired of the Samples family whether they desired an autopsy and they declined. As her attending physician, Dr. Holbert completed Mrs. Samples' death certificate, listing cardiogenic shock as the immediate cause of death due to or as a consequence of blood loss anemia due to a suspected perforated ulcer and hemorrhage.

In the complaint and at trial, petitioner contended that Mrs. Samples reported to the emergency room with a three-day history of a small bowel obstruction, and that respondents were negligent in their treatment of Mrs. Samples, causing her death. Essentially, petitioner alleged that respondents failed to diagnose Mrs. Sample's small bowel obstruction, which escalated to a complete bowel obstruction. However, petitioner's own experts disagreed with one another at trial as to Mrs. Samples' cause of death. One of petitioner's own experts opined that Mrs. Samples died from cardiac arrest due to hypovolemic shock, adding that no one could determine whether her bowel was strangulated.

After a five-day trial, the jury deliberated for approximately one hour and returned a verdict for the defense. The circuit court denied petitioner's motion for new trial by order dated November 26, 2012. From this order, petitioner appeals to this Court.

The standard of review for a denial of a motion for new trial is as follows:

We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion

2

standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*Tennant v. Marion Health Care Foundation, Inc.,* 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995).

Petitioner raises four assignments of error. First, he argues that the circuit court erred by allowing Mrs. Samples' death certificate to be admitted, in light of Dr. Holbert not sending her body for an autopsy, and then further erred by failing to give an adverse inference instruction regarding the cause of death. West Virginia Code § 61-12-8(a) reads, in pertinent part, as follows:

> When any person dies in this state from violence, or by apparent suicide, or suddenly when in apparent good health, or when unattended by a physician, or when an inmate of a public institution, or from some disease which might constitute a threat to public health, or in any suspicious, unusual or unnatural manner, the chief medical examiner, or his or her designee or the county medical examiner, or the coroner of the county in which death occurs shall be immediately notified by the physician in attendance, or if no physician is in attendance, by any law-enforcement officer having knowledge of the death, or by the funeral director, or by any other person present or having knowledge.

Petitioner contends that pursuant to this statute, Dr. Holbert had a duty to refer the body for an autopsy as he was the attending physician, and Mrs. Samples' death was both an unusual and sudden death of a person in apparent good health. Petitioner argues that the circuit court's denial of his motion for an adverse jury instruction and granting of Dr. Holbert's motion *in limine* to prevent reference to his failure to secure an autopsy was based on an overly-restrictive interpretation of West Virginia Code § 61-12-8(a).

As to the death certificate, West Virginia Code § 16-5-28(d) reads, in pertinent part, that "[a] certified copy of a [death certificate] issued in accordance with this section shall be considered for all purposes the same as the original, and shall be prima facie evidence of the facts stated in the record." According to petitioner, because Dr. Holbert "suspected" that Mrs. Samples' death was due to a "perforated ulcer [with] hemorrhage," the death certificate does not contain facts, and the court should have found it to have no probative value, and refused its admission into evidence.

We disagree with petitioner's arguments and characterization of the circuit court's rulings on the lack of an autopsy and the admission of her death certificate into evidence. The record from the trial demonstrates that petitioner simply failed to meet his burden of proof in this case. One of petitioner's experts could not even testify that Mrs. Samples died as a result of a bowel obstruction. His other expert, who did opine at trial that she died of an undiagnosed bowel obstruction, held the opinion for two and a half years that she died of a pulmonary embolism. The jury was made aware of this expert's substantial change in opinion, and that no doubt damaged petitioner's case.

3

Examining petitioner's arguments in reverse order, we find that the circuit court properly refused to give an adverse instruction. In this regard, this Court has held:

> Before a trial court may give an adverse inference jury instruction or impose other sanctions against a party for spoliation of evidence, the following factors must be considered: (1) the party's degree of control, ownership, possession or authority over the destroyed evidence; (2) the amount of prejudice suffered by the opposing party as a result of the missing or destroyed evidence and whether such prejudice was substantial; (3) the reasonableness of anticipating that the evidence would be needed for litigation; and (4) if the party controlled, owned, possessed or had authority over the evidence, the party's degree of fault in causing the destruction of the evidence. The party requesting the adverse inference jury instruction based upon spoliation of evidence has the burden of proof on each element of the four-factor spoliation test. If, however, the trial court finds that the party charged with spoliation of evidence did not control, own, possess, or have authority over the destroyed evidence, the requisite analysis ends, and no adverse inference instruction may be given or other sanction imposed.

Syl. Pt. 2, *Tracy v. Cottrell,* 206 W.Va. 363, 524 S.E.2d 879 (1999).

Petitioner fails to meet all of the elements above. First, it was petitioner's family that had control over the body and declined the autopsy. Second, petitioner was not prejudiced because his experts were able to form opinions as to the cause of death and testify to those opinions. In fact, petitioner's expert who opined that Mrs. Samples died of a bowel obstruction, testified that there was "no question" in his mind to her cause of death. Third, at the time of Mrs. Sample's death, there is nothing to suggest that Dr. Holbert should have anticipated litigation. Finally, Dr. Holbert was not directly at fault for the lack of an autopsy. Petitioner's family declined one, and even assuming that Dr. Holbert referred the body for autopsy, it is speculative to conclude that one would have been performed as the final decision as to whether to conduct an autopsy rests with the medical examiner.

Next, petitioner's reliance on West Virginia Code § 61-12-8 is misplaced. This Court has pointed out that the purpose of this statute is to report suspicious deaths to the medical examiner "for a determination of whether further investigation is necessary to ascertain whether criminal activity might be implicated with respect to a particular death." *Coleman v. Sopher,* 201 W.Va. 588, 597, 499 S.E.2d 592, 601 (1997). Such a determination was not implicated in Mrs. Sample's death. Moreover, petitioner's argument that Mrs. Samples' death was of the type covered by § 61-12-8(a) is flatly inconsistent with his theory at trial. At trial, he contended that Mrs. Samples presented the emergency room with an obvious life-threatening condition necessitating immediate surgical intervention. According to petitioner's own theory, she was not a healthy person who died suddenly with no explanation. Instead, he argues that the explanation of her death should have been obvious to the doctors treating her.

Finally, as to the death certificate, the law does not support petitioner's contention that an equivocal death certificate is inadmissible. To the contrary, a death certificate is required for every death occurring within the State. W.Va. Code § 16-5-19(a). West Virginia Code § 16-5-19(c)(2) requires that the "person completing the cause of death shall attest to its accuracy…"

The death certificate is prima facie evidence of the facts stated therein, however, the parties are free to present alternative theories for the cause of death. The circuit court permitted petitioner to argue that the death certificate was wrong. All the death certificate did was confirm Dr. Holbert's opinion as to Mrs. Samples' cause of death. We cannot find prejudice to petitioner in its admission.

Petitioner's second assignment of error is that the circuit court erred by allowing Dr. Holbert to testify as an expert with no "gate-keeping" analysis of his credentials. "Whether witness is qualified to state opinion is matter which rests within discretion of the trial court, and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused." *Mayhorn v. Logan Medical Foundation,* 193 W.Va. 42, 43, 454 S.E.2d 87, 88 (1994). The record shows that petitioner deposed Dr. Holbert and inquired as to his education and qualifications. Petitioner never moved to limit or strike Dr. Holbert's expected testimony before or during trial. Regardless, Dr. Holbert's counsel elicited detailed testimony as to his education, training, board certification, and employment. Petitioner requested to *voir dire* Dr. Holbert after this testimony was already given. We find that the circuit court properly denied his request. *See State ex rel. Weirton Medical Center v. Mazzone,* 214 W.Va. 146, 587 S.E.2d 122 (2002) (holding that a medical malpractice defendant may testify as an expert witness in his or her behalf).

Third, petitioner argues that the circuit court erred by failing to instruct the jury with regard to UHC, a settled defendant. Petitioner asserts that leaving UHC on the verdict form had the effect of causing the jury to believe that petitioner had both the burden of proof that respondents were negligent and that UHC was not. However, as respondents made no claims against UHC at trial, the burden remained on petitioner at all times. All respondents requested, and were granted, was that UHC remain on the verdict form as is recognized by West Virginia Code § 55-7B-9. In this case, the jury did not even reach apportionment of fault because it found respondents and UHC to be not at fault at all. Therefore, we cannot find that petitioner was prejudiced by the circuit court's instruction.

Last, petitioner contends that respondents' respective counsel engaged in improper "golden rule" closing arguments that should be grounds for new trial. In closing, counsel for WVUBOG stated:

> Be reasonable. That's what it is. I want you to remember that, because who wants to be held to a standard of perfection? Who wants to have to be right every time? None of us do. I don't care if you're a plumber, a teacher, a lawyer, a physician. Nobody wants to be held to that standard.
> . . .
>
> The concept of negligence does not include hindsight. And thank goodness for that. I mean, who wants to be the person that's judged with 20/20 hindsight and go back to real life and say, well, gee, last week you shouldn't have made that decision.

Dr. Holbert's counsel stated:

5

I mean, Dr. Hollander [petitioner's expert witness] said he got sued because he opened up somebody's belly because somebody told him there was something there and it wasn't. If a surgeon would have done surgery without an indication and we sent them to them, we'd be facing that music too.

Petitioner argues that although the circuit court directed the jury to disregard counsels' statements, the jury was already prejudiced by them. We disagree with petitioner that the above-quoted statements constitute grounds for a new trial. "The discretion of the trial court in ruling on the propriety of argument by counsel before the jury will not be interfered with by the appellate court, unless it appears that the rights of the complaining party have been prejudiced, or that manifest injustice resulted therefrom." Syl., *State v. Boggs,* 103 W.Va. 641, 138 S.E. 321 (1927).

With respect to WVUBOG's closing, we find that counsel did not ask the jury to place itself in petitioner's or Mrs. Sample's shoes, therefore, the argument is not "golden rule" argument as argued by petitioner. With respect to Dr. Holbert's closing, petitioner equates it to the improper closing at issue in *Jones v. Setser,* 224 W.Va. 483, 686 S.E.2d 623 (2009). In *Jones,* this Court found error in not granting a mistrial where a defendant in a malpractice case argued plaintiff's lawyers were going to sue him no matter what. The defense attorney in *Jones* used a three-frame cartoon to argue that society has become such that doctors are required to be infallible. Then, counsel showed a slide that read, "Dr. Setser Can't Win" and that "[Plaintiff's counsel] . . . will take a bad result and turn it into a malpractice case every time." The Court found this to be a personalized attack on counsel. However, in the present case, Dr. Holbert's counsel made no mention of petitioner, his counsel, or his witnesses in closing. Moreover, there is no reference to tort reform, as petitioner alleges. Therefore, we do not find that respondents' closing arguments constitute grounds for a new trial.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 18, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II