**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**West Liberty University Board of Governors
and West Liberty University,
Defendants Below, Petitioners**

**FILED**

**January 5, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No.  16-0942** (Ohio County 13-C-322)

**Stewart Lane,
Plaintiff Below, Respondent**

**MEMORANDUM DECISION**

Petitioners West Liberty University Board of Governors and West Liberty University, by counsel, Thomas E. Buck and Bruce M. Clark, appeal various pretrial rulings in Respondent Stewart Lane's action for premises liability and/or defective or dangerous condition. Respondent, by counsel James R. Leach and Victoria J. Sopranik, filed a response in support of the circuit court's order and also raised a cross-assignment of error. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Late in the afternoon of March 1, 2012, nineteen-year-old Stewart Lane (the "plaintiff"), then a full-time student at West Liberty University (the "University" or "defendant"), was swimming in the University's pool with several friends. The lifeguard on duty was West Liberty University student/employee M.C. Boyd. Plaintiff and his friends asked the lifeguard to set up the University's portable basketball hoop (the "hoop") so they could play basketball in the pool. The lifeguard retrieved the basketball hoop from a storage room and set it at the edge of the pool.

The basketball hoop was four to five feet tall and about as wide. It had a square plastic base that could be filled with water. The base was composed of translucent white plastic through which one could see if the base contained water. There was little or no water in the hoop's base. There were no warnings on the hoop. The lifeguard later admitted she was not trained in how to set up the hoop, she knew the hoop was unstable without water in the base, and the hoop could tip over if touched. The lifeguard claimed she asked the men if they had used the hoop before and twice warned that the hoop could fall into the water. Plaintiff claims he heard neither the lifeguard's question nor her warning.

Soon thereafter, one of the swimmers dunked a basketball through the hoop causing the hoop to fall. The swimmers righted the hoop and continued their basketball game. Thereafter,

1

another player dunked the basketball; the hoop again fell and was again reset on the pool's edge. During these "dunks," the players held onto the rim of the hoop, so that when the hoop fell, it did not land in the pool.

Minutes later, plaintiff dunked the basketball and then went under the water's surface. However, as he emerged from the water, the steel rim of the falling hoop struck plaintiff's face causing lacerations and heavy bleeding that was difficult to staunch. Plaintiff was taken to a hospital for treatment. Plaintiff's injuries required plastic surgery, which was followed by a hospitalization for infectious cellulitis. A few years later, plaintiff underwent a scar revision surgery. Plaintiff's medical expenses totaled an undisputed $36,000, and he was left with a permanent facial scar.

The lifeguard did not see the hoop's rim strike plaintiff's face because she was studying for a test. She later admitted she knew it was a violation of her duties to be studying while patrons were at the pool. She also admitted it was her job to keep the pool safe, to enforce pool rules, to stop any dangerous activity by pool patrons, to remove any defective or dangerous pool equipment, and to notify her supervisor of any issues.

After plaintiff was taken to the hospital, the lifeguard placed the basketball hoop in a dumpster near the pool. The next morning, the lifeguard notified her supervisor, Robin Brunner, of plaintiff's injuries. Subsequently, Dr. Rhonda Noble, the University's Chairperson of the Department of Health and Human Resources, who was responsible for the pool, was also notified of plaintiff's injuries. Plaintiff claims that the timing of these notices would have allowed the University's staff to retrieve the hoop from the dumpster, but the staff failed to do so. Dr. Noble later testified at her deposition that the "[f]irst thing you do is inspect the equipment because that's the first thing how they prove negligence if the equipment was unsafe or they were not supervised."

Plaintiff sued the University and its Board of Governors (the "defendants") for the damages caused by his injuries. Plaintiff alleged that the hoop was not intended to be used without filling the base with water, and that by allowing plaintiff to use the hoop without its base being filled with water, defendants breached their duty to protect him from an unsafe, defective, and dangerous condition located on the University's property. Defendants countered that the hoop was safe; that it could be used with or without water in its base depending on whether a permanent or temporary use was contemplated; and that the condition of the hoop was obvious.

Prior to trial, the parties debated the impact of the lifeguard's decision to dispose of the basketball hoop before it could be inspected. Plaintiff made a motion to preclude the defendants from introducing evidence that the hoop was "not unsafe." By order entered April 29, 2016, the circuit court granted plaintiff's motion largely because defendants failed to preserve the hoop. Specifically, the court ruled that,

> plaintiff will be permitted to argue and present evidence that the hoop was unsafe
> and dangerous due to the fact that it had no or very little water in it prior to the
> incident. Defendants will not be permitted to argue, present evidence, or
> attack/impeach plaintiff's expert/evidence that the hoop was not unsafe, not

dangerous, and/or not defective. In the event that defendants attempt to attack/impeach plaintiff's expert/evidence in this way, a spoliation instruction will be given at that time.

However, in a May 5, 2016, order, the circuit court modified and clarified its April 29, 2016, order and ruled that, because the specifics of the hoop were unknown, "no evidence may be presented [by any party] as to whether this hoop was 'assembled' safely." However, the court also ruled that if the proper foundation was laid, plaintiff would be allowed to provide general opinions regarding poolside basketball hoops, and to mention that defendants disposed of the hoop and, as a result, its make, model, and safety instructions could not be determined.

Thereafter, the defendants filed a motion for summary judgment. In their motion, defendants argued (1) that plaintiff failed to provide any evidence that the hoop was unsafe, therefore, he could not succeed on a premises liability/unsafe condition claim; (2) plaintiff's only evidence regarding the hoop was an expert who admitted in his deposition that he knew nothing about the hoop that had caused plaintiff's injuries; and (3) plaintiff's claims were barred by the "open and obvious" doctrine. Following oral argument, the circuit court denied defendants' motion by order entered June 6, 2016.

Defendants also filed a pretrial motion in limine to exclude any evidence regarding whether the University's employees had failed to properly report plaintiff's injuries up the University's chain of command. Defendants maintained that plaintiff's complaint regarded the duties/actions of the parties prior to, and at the time of, plaintiff's injuries; accordingly, defendants argued that what occurred thereafter, such as the post-injury reporting, had no bearing on the case. In a June 8, 2016, order, the circuit court deferred its ruling on defendants' alleged "failure to report." Thereafter, at trial, the circuit court allowed plaintiff to enter evidence regarding how the incident was reported up the chain of command.

Plaintiff's three-day trial commenced on August 2, 2016. The lifeguard and plaintiff testified that the hoop fell at least twice before plaintiff was injured. The case was thereafter submitted to the jury, which was asked the following question: "Do you believe that the fact that the basketball hoop could fall was open, obvious, reasonably apparent, or was as well-known to Plaintiff as it was to Defendant?" The jury answered, "No." The jury also found that both plaintiff and defendants were negligent, but found that plaintiff's negligence did not contribute to his injury. Finally, the jury found that defendants' negligence proximately caused plaintiff's injuries. The jury awarded plaintiff his undisputed medical expenses of $36,000, and $44,000 in damages for pain, mental anguish, emotion distress, loss of enjoyment of life, and permanent scarring.

Defendants did not file a motion for a new trial. Instead, on October 4, 2016, they filed a direct appeal which this Court dismissed by order entered October 19, 2016, due to defendants' failure to file a motion for a new trial. *See W.Va. Dep't of Transp., Div. of Highways v. Newton*, 235 W.Va. 267, 271, 773 S.E.2d 371, 375 (2015) (failure to file motion under Rule 59 for new trial precludes appeal of alleged trial errors). Defendants responded with a second notice of appeal, followed by a motion to docket the second notice of appeal, which requested leave to appeal certain pretrial rulings in the record. On December 15, 2016, this Court, on its own

motion, consolidated defendants' two notices of appeal under No. 16-0942; however, we cautioned that any assignments of error requiring the filing of a post-trial motion would not be considered.

Defendants now appeal and raise five assignments of error. Plaintiff raises a cross-assignment of error.

Defendants' first and second arguments are that the circuit court erred in denying their motion for summary judgment based on the open and obvious doctrine. Defendants argue that the open and obvious doctrine precluded plaintiff's claim as a matter of law because the evidence indisputably showed that plaintiff knew the hoop could fall before he chose to dunk the basketball. Defendants highlight that plaintiff admitted seeing his friends "dunk" on the hoop at least twice, causing it to fall. Defendants also point to the evidence that the base of the hoop was translucent and the plaintiff could see whether it held water. Thus, defendants contend that the condition of the hoop was not concealed from plaintiff and, therefore, plaintiff chose to dunk a basketball with full knowledge the hoop would likely fall. Accordingly, defendants maintain they had no duty to protect plaintiff from the hoop, and, thus, the circuit court erred in failing to grant defendants' summary judgment motion.

The open and obvious doctrine was legislatively established in West Virginia Code § 55-7-28 and provides that

> a possessor of real property . . . owes no duty of care to protect others against dangers that are open, obvious, reasonably apparent or as well known to the person injured as they are to the owner or occupant, and shall not be held liable for civil damages for any injuries sustained as a result of such dangers.

However, "[t]he owner or the occupant of premises owes to an invited person the duty to exercise ordinary care to keep and maintain the premises in a reasonably safe condition." Syl. Pt. 2, *Burdette v. Burdette*, 147 W.Va. 313, 127 S.E.2d 249 (1962). The open and obvious statute does not abrogate this duty.

Here, the pretrial record established genuine issues of material fact, particularly as to whether the defendants failed to keep the pool in a reasonably safe condition. Defendants had actual knowledge of the hoop's dangers. Moreover, genuine issues existed regarding whether plaintiff's friends' conduct or that of the lifeguard created an open and obvious condition. In this case, defendants' employees, including the lifeguard and Dr. Noble, admitted knowledge of the dangerous condition created by the hoop. In contrast, the record on appeal shows that plaintiff had no prior knowledge of the hoop's danger because he had used the hoop only this one time, and only for about fifteen minutes before his injury. Further, plaintiff did not help the lifeguard set the hoop in place at the pool's edge, he did not speak to the lifeguard, and he testified that he did not hear the lifeguard speak to him. Further, plaintiff had no training regarding the proper set up or use of the hoop. Thus, because the dangerous condition was not "as well known to [plaintiff] as [it was] to the owner," defendants were required to establish that the dangerous condition was "open, obvious, [and] reasonably apparent" to plaintiff.

4

Defendants insist that, as a matter of law, the dangerous condition of the hoop was open and obvious because it was "undisputed" that the hoop fell into the water "when adult men were dunking on it." Defendants also claim that because plaintiff testified he saw some water in the base of the hoop, the condition of the hoop was not a hidden or latent defect. However, merely seeing water in the hoop's base did not establish that the danger was readily apparent to plaintiff. Nor did plaintiff's friends' dunking of the basketball warn plaintiff of any danger because, when the hoop fell previously, the friends held onto the hoop so it did not fall into the pool. Whereas, when plaintiff "dunked" the ball, he did not hold onto the hoop.

We conclude that genuine issues of material fact existed for resolution by the jury, and, therefore, the circuit court properly rejected the defendants' motion for summary judgment.

Petitioners' third assignment of error is that the circuit court erred by entering pretrial rulings that the basketball hoop was unsafe and dangerous, and by prohibiting defendants from disputing these findings at trial.

As noted above, the circuit court's April 29, 2016, pretrial order precluded defendants from arguing "that the hoop in question was safe (or not unsafe), not defective and/or not dangerous." The court's May 5, 2016, order modified and clarified the April 29, 2016, order by ruling that no evidence could be presented "as to whether this particular hoop was 'assembled' safely." Defendants argue that the circuit court's decision in both orders was improper because, in this premises liability case, plaintiff bore the burden of proving whether the hoop was dangerous, unsafe, or defective. Defendants further claim that together, the orders (1) allowed plaintiff to avoid that burden of proof, and (2) prevented defendants from showing that plaintiff did not believe the hoop was unsafe. Further, although, the circuit court never gave a spoliation instruction to the jury, defendants argue that it wrongfully threatened to sanction defendants with a spoliation instruction if they argued that the hoop was "not unsafe." Defendants claim that threat was error because (1) the preclusion of the "not unsafe" argument was error; and (2) the circuit court failed to follow the four-factor test laid out in *Tracy v. Cottrell ex rel. Cottrell*, 206 W.Va. 363, 524 S.E.2d 879 (1999), regarding how and when spoliation instructions should be given. Finally, defendants claim that the circuit court also failed to follow the *in camera* procedure laid out in *General Pipeline Construction, Inc. v. Hairston*, 234 W.Va. 274, 285-86, 765 S.E.2d 163, 174-75 (2014), in making its spoliation instruction determination. Defendants assert the circuit court's pretrial rulings warrant reversal of the jury's verdict.

Our review of the record supports the circuit court's decision. Given defendants' disposal of the hoop, the circuit court properly acted within its discretion and limited testimony on the assembly/safety of the hoop. In its May 5, 2016, order, the circuit court ruled that "no evidence may be presented [by any party] as to whether this hoop was 'assembled' safely." Other than this narrow exception, based on defendants' spoliation of the hoop, defendants' expert was free to testify regarding any other relevant issue. Thus, the ruling was not prejudicial to defendants. If defendants' expert had testified that the hoop was "not unsafe," plaintiff would not have been able to refute that claim given defendants' spoliation of the hoop. This is exactly what the spoliation doctrine was designed to do: prevent those who fail to preserve evidence from using the lack of evidence as a defense, particularly where litigation may be anticipated. See *Tracy*, 206 W.Va. at 372, 524 S.E.2d at 888.

5

Our law is clear that a circuit court may impose sanctions on a party who destroys or disposes of evidence, including giving a jury instruction on spoliation. *Id.* This Court has held that

> [b]efore a trial court may give an adverse inference jury instruction or impose other sanctions against a party for spoliation of evidence, the following factors must be considered: (1) the party's degree of control, ownership, possession or authority over the destroyed evidence; (2) the amount of prejudice suffered by the opposing party as a result of the missing or destroyed evidence and whether such prejudice was substantial; (3) the reasonableness of anticipating that the evidence would be needed for litigation; and (4) if the party controlled, owned, possessed or had authority over the evidence, the party's degree of fault in causing the destruction of the evidence

*Id.* at 368, 524 S.E.2d at 884, syl. pt. 2. Plaintiff's evidence satisfied each of these elements because: (1) defendants had total control, ownership, possession and authority over the hoop; (2) plaintiff did not know the make, model, or the design of the hoop, thus, he was precluded from opining that the hoop was unsafe, which substantially prejudiced his case; (3) litigation was likely over plaintiff's injury; and (4) defendants were entirely at fault in destroying the hoop. Accordingly, the trial court could have properly given a spoliation instruction to the jury, instead of merely threatening to do so.

As for defendants' complaint that the circuit court threatened to give a spoliation instruction without holding the required spoliation hearing, we find that defendants waived any objection to the lack of a spoliation instruction hearing because they did not object to the lack of such a hearing. "A litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal." Syl. Pt. 6, *Page v. Columbia Nat. Res., Inc.*, 198 W.Va. 378, 480 S.E.2d 817 (1996), citing Syl. Pt. 1, *Maples v. W.Va. Dep't of Commerce*, 197 W.Va. 318, 475 S.E.2d 410 (1996). Moreover, given that no spoliation instruction was given, the lack of a hearing on such an instruction did not prejudice defendants. We, therefore, find no error on this point.

Defendants' fourth assignment of error is that the circuit court refused their motion in limine and improperly allowed the plaintiff to make claims regarding defendants' post-accident investigation. Prior to trial, defendants filed a pretrial motion in limine to preclude evidence of defendants' post-accident investigation of plaintiff's injury. Defendants argued that when and/or how the accident was reported was not relevant to any jury issue and that it was likely plaintiff would raise the post-accident investigation to distract or confuse the jury. The circuit court denied the motion and allowed plaintiff to introduce evidence regarding the university's post-accident investigation at trial. On this ground, defendants ask us to vacate plaintiff's verdict.

The record, however, disposes of defendants' argument. The circuit court did not deny defendants' pretrial motion. Instead, the circuit court deferred its ruling on defendants' motion in limine to preclude evidence of any post-accident investigation "until such time as it arises at

trial." Thus, the circuit court's rulings on this issue occurred at trial. Rule 59(f) of the Rules of Civil Procedure provides as follows:

> If a party fails to make a timely motion for a new trial, after a trial by jury in which judgment as a matter of law has not been rendered by the court, the party is deemed to have waived all errors occurring during the trial which the party might have assigned as grounds in support of such motion. . . .

Accordingly, we find that defendants have waived this issue.

Defendants' fifth and final assignment of error is that the circuit court erred in allowing plaintiff's expert, Trevor Sherwood, to testify about lifeguard training and qualifications. Mr. Sherwood admitted that he had not been a lifeguard or trained lifeguards for over fifteen years. Based on this testimony, defendants contend the circuit court erred in allowing Mr. Sherwood to opine in that regard.

Defendants also argue the circuit court erred in allowing Mr. Sherwood to testify about the operation, inspection, and maintenance of pool accessories. The circuit court allowed Mr. Sherwood to opine about the "use, assembly, installation and safety" of poolside basketball hoops "in general." Defendants contend that evidence regarding "other" hoops was clearly irrelevant. In the alternative, defendants argue that, even if such evidence had been relevant, Mr. Sherwood had no specialized training, education, or knowledge with regard to the use, maintenance, or design of basketball hoops "in general." Defendants claim Mr. Sherwood also had no technical background in engineering, mechanical engineering, physics, or any other subject that would allow him to provide expert testimony about load-bearing structures or weight shifting. Moreover, he had no design background that would qualify him to testify regarding the design and function of such hoops. Defendants highlight that Mr. Sherwood admitted in his deposition that he was not an expert on basketball hoops and that he had obtained his knowledge in that regard by conducting a "Google" search on "basketball hoops" and reading the results. *See Pound v. Tucker*, No. 13-1277, 2014 WL 6607470, at *3 (W.Va. Nov. 21, 2014) (memorandum decision) (conducting an internet search does not an expert make). Further, Mr. Sherwood could not provide any testimony regarding whether the specific hoop that injured plaintiff was unsafe, dangerous, or defective because he never saw it; he was not present when it fell; and the circuit court precluded Mr. Sherwood from opining on the subject hoop's safety or lack thereof. Thus, defendants claim Mr. Sherwood's opinions were totally unqualified, wholly irrelevant, and served to distract and confuse the jury.

The record reveals, however, that the circuit court did not give a definitive final pretrial ruling on the defendants' motion to exclude Mr. Sherwood's testimony. In its May 5, 2016, order, the circuit court allowed Mr. Sherwood to opine, in general, about pool-side hoops and lifeguard safety, but only "if the appropriate qualification foundations [were] laid" *at trial.* Moreover, the court deferred ruling further on Mr. Sherwood's opinions until trial. Thus, because the court ruled on this issue *at trial*, defendants have waived this assignment of error due to their failure to file a motion for a new trial. *See* Rule 59(f).

Plaintiff has asserted one cross-assignment of error in his response brief. Plaintiff argues that the circuit court erred in denying him certain costs in its judgment order. Following the jury's verdict, plaintiff filed a motion for pre- and post-judgment interest, witness fees, and deposition costs in the amount of $8,495.43 against defendants. In a fourteen-page order denying plaintiff's motion for costs, the circuit court provided a list of "costs" it believed to be proper, including (1) the statutory fees under West Virginia Code § 59-2-14; (2) fees of officers, copies of pleadings, legal notices, and publications under West Virginia Code § 59-2-15; and (3) juror mileage, meals, and daily fees under West Virginia Code § 59-2-17. However, the circuit court found that an award of those other costs sought by plaintiff would be "penal" and, therefore, impermissible. The circuit court's September 26, 2016, judgment order awarded plaintiff pre- and post-judgment interest and jury costs of $1,451.68.

Plaintiff responded by filing a renewed motion for costs. On December 19, 2016, the circuit court denied the renewed motion on the ground that plaintiff "failed to identify or cite a West Virginia Rule of Civil Procedure under which [he] is acting" in violation of *Malone v. Potomac Highlands Airport Auth.*, 237 W.Va. 235, 786 S.E.2d 594 (2015). The circuit court presumed plaintiff was seeking costs under Rule 60, and then denied relief on the ground that plaintiff's motion did not reference any of the required grounds for relief under that rule.

Plaintiff argues that the circuit court erred in analyzing his renewed motion for costs under Rule 60. He asserts that the circuit court should have analyzed the motion under Rule 59(e) because he filed the motion within ten days of the entry of the judgment order, and sought to amend the award of costs in the judgment order. Plaintiff further argues that the costs were fair and proper under the law. *See* W.Va. Code §§ 59-2-8, -14, and -15.

On the record presented, we cannot see where the plaintiff plainly identified for the circuit court the specific rule upon which he made his renewed motion. "The filing of motions which fail to identify the Rule of Civil Procedure or other legal authority providing the right to relief may serve as grounds for summary denial." Syl. Pt. 3, in part, *Malone*, 237 W.Va. at 236, 786 S.E.2d at 595. We, therefore, find no error in the circuit court's ruling.

For the foregoing reasons, we affirm the pretrial rulings of which defendants complain and affirm the circuit court's denial of plaintiff's renewed motion for costs.

Affirmed.

**ISSUED:** January 5, 2018

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker